PEOPLE v PACE

Docket No. 78-4587. Submitted September 3, 1980, at Lansing.—Decided December 16, 1980.

Carl H. Pace was convicted of assault with a dangerous weapon without intent to commit murder or to inflict great bodily harm and was sentenced to prison, Washtenaw Circuit Court, Henry T. Conlin, J. He appeals, alleging that the trial court erred in permitting the prosecutor to cross-examine him about statements not produced pursuant to and in violation of a discovery order and in instructing the jury on the use of deadly force in self-defense. *Held:*

1. The trial court entered an order of discovery specifically requiring all statements made by defendant to be disclosed to his counsel, and defense counsel had a right to rely on the belief that defendant had made no other statements than those disclosed. The trial court erred in allowing the prosecutor to use nondisclosed statements of defendant during cross-examination.

2. The trial court improperly instructed the jury on the use of deadly force in self-defense where no testimony had been

REFERENCES FOR POINTS IN HEADNOTES

[1, 3, 5, 13] 21 Am Jur 2d, Criminal Law § 331.

23 Am Jur 2d, Depositions and Discovery §§ 308, 309.

Interference by prosecutor with defense counsel's pretrial investigation of witnesses. 90 ALR3d 1231.

Right of accused in state courts to inspection or disclosure of evidence in possession of prosecution. 7 ALR3d 8.

[2, 13] 4 Am Jur 2d, Appeal and Error §§ 79, 80, 159.

5 Am Jur 2d, Appeal and Error § 778.

[4] 21 Am Jur 2d, Criminal Law § 311.

Right of defendant in criminal case to conduct defense in person, or to participate with counsel. 77 ALR2d 1233.

[6, 8] 6 Am Jur 2d, Assault and Battery §§ 15, 31, 94.

[7] 6 Am Jur 2d, Assault and Battery §§ 3, 4, 53.

[9] 6 Am Jur 2d, Assault and Battery § 13 *et seq.*

[10] 6 Am Jur 2d, Assault and Battery §§ 50, 51.

[11] 6 Am Jur 2d, Assault and Battery § 72.

[12] 5 Am Jur 2d, Appeal and Error § 816.

75 Am Jur 2d, Trial §§ 928, 929.

presented tending to show that deadly force had been employed by defendant.

Reversed and remanded.

CYNAR, J., concurred. He would comment further that the failure by the prosecutor to comply with the trial court's discovery order would not necessarily have required reversal of defendant's conviction and remand to the trial court had the prosecutor informed the trial court of his noncompliance and offered an explanation of his actions outside the presence of the jury prior to undertaking cross-examination of the defendant concerning the statements in question.

## OPINION OF THE COURT

1. PROSECUTING ATTORNEYS — DISCOVERY — WITHHOLDING OF MATERIALS — REMEDY.

    A prosecutor who obviates a defense motion for discovery in a criminal case by arguing that defendant has been voluntarily furnished all requested material where, in fact, certain material has been withheld is bound to divulge everything he would have been obliged to divulge had a discovery order actually been entered.

2. PROSECUTING ATTORNEYS — VIOLATION OF DISCOVERY ORDERS — GROUNDS FOR REVERSAL.

    Violation of a discovery order by a prosecutor, even where done inadvertently and in good faith, is grounds for reversal on appeal absent clear evidence that the failure to divulge was harmless beyond a reasonable doubt; intentional failure to comply with such an order should never be regarded as harmless error.

3. CRIMINAL LAW — DISCOVERY ORDERS — LAW OF THE CASE.

    Once a discovery order is entered in a criminal action it becomes the law of the case, and a defendant has a right to rely on its requirements.

4. CRIMINAL LAW — TRIAL STRATEGY.

    A defendant in a criminal case is ordinarily bound by his counsel's trial strategy.

5. CRIMINAL LAW — VIOLATION OF DISCOVERY ORDERS — USE OF DEFENDANTS' STATEMENTS.

    Statements made by a defendant which are not disclosed by a prosecutor in violation of a discovery order which provides that undisclosed statements may not be used for any purpose, including impeachment, may not be so used notwithstanding the

rule which states that statements taken in violation of a defendant's *Miranda* rights may be used for impeachment should he choose to testify.

6. Assault and Battery — Threat of Violence — Deadly Force.

The mere display of a knife during an assault implies a threat of violence, but, without more, it does not constitute the use of deadly force.

7. Assault and Battery — Felonious Assault.

A case of simple assault is made out where either battery is attempted or an unlawful act is committed which places a person in reasonable apprehension of receiving an imminent battery; the only additional element which must be proven to make out a case of felonious assault is the use of a dangerous weapon in making an assault.

8. Assault and Battery — Felonious Assault — Use of Force.

A felonious assault conviction can be sustained without proof of the use of or attempt to utilize any force at all.

9. Assault and Battery — Deadly Force.

Deadly force should be held to have been used during an assault where a defendant's acts were such that the natural, probable, and foreseeable consequence of his acts is death.

10. Assault and Battery — Jury Instructions — Deadly Force — Nondeadly Force.

A trial court, in instructing the jury in a case where the evidence is conflicting as to whether a defendant used deadly force during an assault, should preface its reading of the criminal jury instructions on use of deadly force in self-defense and the use of nondeadly force in self-defense or defense of others with a statement that the instructions articulate standards which are to be applied respectively only where the jury finds that deadly or nondeadly force was involved (CJI 7:9:01, 7:9:09).

11. Assault and Battery — Felonious Assault — Deadly Force — Self-Defense.

The right of a defendant charged with felonious assault to claim self-defense is greatly restricted where he has used deadly force.

12. Criminal Law — Jury Instructions — Proper and Improper Instructions.

A presumption arises that a jury in a criminal case followed an

improper instruction by the trial court where both a proper
and an improper instruction are given.

13. CRIMINAL LAW — VIOLATION OF DISCOVERY ORDERS — REMEDY ON
      APPEAL.
    A failure by a prosecutor to comply with a discovery order of a
    trial court may not necessarily require reversal of a defendant's
    conviction and a remand to the trial court on appeal where the
    prosecutor has informed the trial court of his noncompliance
    and offered to explain his actions in the absence of the jury
    prior to undertaking cross-examination of the defendant con-
    cerning the material not revealed.

*Frank J. Kelley,* Attorney General, *Robert A.
Derengoski,* Solicitor General, *William F. Delhey,*
Prosecuting Attorney, and *James S. Sexsmith,*
Assistant Prosecuting Attorney, for the people.

*Terrence F. Cavanaugh,* for defendant on appeal.

Before: DANHOF, C.J., and BRONSON and CYNAR,
JJ.

PER CURIAM. Following a jury trial in the Wash-
tenaw County Circuit Court, defendant was con-
victed of assault with a dangerous weapon without
the intent to commit murder or the intent to
inflict great bodily harm in contravention of MCL
750.82; MSA 28.277. Defendant was sentenced to a
two to four-year term of imprisonment, with the
recommendation that he be enrolled in an alcohol-
improvement program.

The charge arose out of a family squabble. The
complainant, Kelly Gene Hamilton, testified that
he had sold a pair of speakers to Sandra Pace, his
sister-in-law. Carl Pace, the defendant, was the
former husband of Sandra. Despite their divorce,
Sandra stated that she and Carl were still in love.

According to Mr. Hamilton and his wife, Nancy

Jo Hamilton, Mrs. Pace had failed to make the agreed upon payments for the speakers which Mr. Hamilton had purchased on credit. They were not fully paid off when they were sold to Mrs. Pace and, as a result, the retailer from whom the speakers were bought was asking Mr. Hamilton for payment. Consequently, both Mr. and Mrs. Hamilton were concerned about Mrs. Pace's failure to pay as agreed.

Sandra Pace's testimony concerning the purchase of the speakers differed from that of the Hamiltons. She indicated that she had contracted to pay $150 for the speakers, that she had already paid $300 for them, and that the Hamiltons "were saying that I owed $50 more". Mrs. Pace thought that the company that originally sold the speakers to the Hamiltons may have miscalculated the total payments. Consequently, she asked Mrs. Hamilton for the phone number of the selling merchant. Mrs. Hamilton, however, took this request as an accusation that she was trying to "rip off" an additional $50. As a result of this belief, she told Mrs. Pace just to forget the remaining debt.

Testimony showed that on November 6, 1977, Carl and Sandra Pace were visiting at the Hamilton residence. Defendant and Mr. Hamilton got into an argument over the speakers, and the Paces were asked to leave. At this point, the testimony diverges concerning exactly what happened and why.

According to the Hamiltons, when defendant was asked to leave, he reached into his pocket and pulled out a hunting knife with a broken handle or blade. Defendant and Mr. Hamilton then began to wrestle. Ultimately, defendant hit Hamilton across the head with a shoe. As a result of the blow, Hamilton needed four stitches.

Sandra Pace testified that, while at the Hamiltons' home, defendant brought up the subject of the speakers. Mr. Hamilton offered to take $50 off the price of the speakers in exchange for a car owned by Mrs. Pace. However, this deal could not be culminated because she had already traded the car for an AM-FM radio. A heated discussion then ensued. According to Mrs. Pace, Mr. Hamilton "jumped up and jumping on Carl, jumping right in his face and screaming", told him to leave. Mrs. Pace never saw her husband pull out the broken knife, but did notice it in his hand later on.

Mrs. Pace stated that, after Hamilton told defendant to leave, the Paces gathered up their belongings and headed for their car. Mr. Hamilton stood in the hallway with a stick, and defendant stood in the front doorway. Mrs. Pace left the house for the automobile, believing that defendant was following her. When she got to the car and noticed he was not there, she returned to the Hamiltons' mobile home. At this time, she noticed Mrs. Hamilton stabbing at defendant. She saw scratches on defendant caused by this stabbing. At the time of the altercation, Mrs. Pace was on methadone.

Defendant stated that he had been using the knife in question to "install this wire harness" on a car in the afternoon. While not in use, the knife was kept inside his wallet. At the Hamiltons, defendant told complainant that the speakers in dispute "weren't too good". This enraged Mr. Hamilton. When Hamilton began to come toward defendant with what appeared to be a "little baseball bat", he threw his shoe. The shoe hit Hamilton in the forehead, resulting in the injury. In the meantime, Mrs. Hamilton stabbed defendant with a knife in the neck and shoulder. After she grabbed him from behind, defendant drew out his knife to scare her off.

# I

Defendant contends that reversible error was committed when the prosecutor cross-examined him with statements not produced in violation of a discovery order. The discovery order provided in pertinent part:

"IT IS HEREBY ORDERED, that the Prosecuting Attorney for Washtenaw County immediately disclose and provide to the Washtenaw County Public Defender the following:

\* \* \*

"2. A verbatim transcript and any summarized version, of all statements, admissions, confessions, or utterances of the defendant whether tape recorded, handwritten, or orally preserved, and whether made to police or lay witnesses, and whether exculpatory, inculpatory, or neutral.

\* \* \*

"IT IT *[sic]* IS FURTHER ORDERED, that the Prosecuting Attorney for Washtenaw County has a continuing duty to provide to the defense counsel any of the above-mentioned discoverable materials which become known to the prosecution or police after the entry of this order.

"IT IS FURTHER ORDERED, that failure on the part of the Prosecuting Attorney for the County of Washtenaw to comply with the above Order, shall result in the suppression of all evidence and statements which were ordered to be provided to the defense counsel. *Any evidence or statement suppressed pursuant to this paragraph shall not be used at trial for any purpose, whether in the Prosecution's case in chief or for impeachment."* (Emphasis added.)

On cross-examination, defendant was asked if he recalled making a statement to Officer Mead. Defense counsel objected, but the trial court overruled the objection, apparently not realizing that

the statement had not been disclosed to counsel. When defendant said he could not recall the statement, it was read. It provided, "I don't know if I saw [Mrs. Hamilton] stab me. I didn't see any knife. I saw her in the kitchen drawers getting some knives. I wielded at her with my knife after hitting Kelly with the shoe".

The prosecutor then asked defendant if he recalled stating that "[I] was high and there is a lot that [I] don't remember because [I] had an alcoholic black out". Defense counsel again objected. When the trial court ascertained that the statement was being used in violation of its discovery order, it retracted its position that the questioning constituted proper cross-examination, sustained the objection, and stated:

"I think that the procedure in not giving the information to defense counsel is a very unfair tactic and I am disturbed about it Mr. Stanowski, and I am going to ask you and your department to look into it. I don't like my court used that way, sir. If there is anything I detest is to have the prosecution or the defense, either one of them, take an order which I gave and not carry it out and then come into court and ask me to heal their wound on it. Do you understand what I am saying, sir?"

On appeal, defendant relies primarily on *Brady v Maryland,* 373 US 83; 83 S Ct 1194; 10 L Ed 2d 215 (1963). *Brady,* however, was concerned with prosecution suppression of evidence favorable to the accused, while here, the suppressed statements were unfavorable and lessened defendant's credibility. However, *Brady* was not concerned with *suppression of evidence in violation of a court's discovery order.* Due to this salient difference between *Brady* and the instant case, we do not dispose of this matter on the authority of *Brady.*

Although this Court has had the opportunity to consider problems of discovery on past occasions, this specific difficulty has never arisen. *People v Florinchi,* 84 Mich App 128; 269 NW2d 500 (1978), *lv den* 405 Mich 828 (1979), is perhaps closer on its facts to this case than any other decided by this Court. In *Florinchi,* the trial court refused to grant defendant's motion for discovery, relying on the prosecutor's statement that he had already furnished defendant with all requested police reports. In fact, certain "tip sheets" had not been divulged. This Court found that the prosecutor had been allowed to supplant defendant's motion for discovery and, by so doing, he became bound to disclose liberally, viewing all favorable evidence as that which might lead a jury to entertain reasonable doubt. In other words, the *Florinchi* Court held that the prosecutor was bound to divulge everything he would have been obliged to had a discovery order actually been entered. Due to the prosecutor's failure to divulge the information, reversal resulted.

We frankly admit that differences exist between the instant case and *Florinchi.* However, we believe that, if anything, the present case represents a stronger argument for reversal. Here, an explicit discovery order was entered specifically requiring all statements made by defendant to be disclosed to counsel.

Where a prosecutor has violated a discovery order—even if done inadvertently in good faith[1]—

[1] The prosecution indeed contends that the failure to comply with the order was mere oversight so that reversal is unwarranted. The good faith of the prosecutor is simply not relevant in this context. If the failure to divulge may have harmed defendant, the error will not be ignored because the prosecutor's intentions were pure. Of course, if we were to conclude that the prosecutor failed to comply with a discovery order in bad faith, reversal would be required for the intentional injection of error into the proceedings, which error can

unless it is clear that the failure to divulge was harmless beyond a reasonable doubt, we will reverse.[2] In the instant matter, we are unable to find the error harmless. In light of the discovery order, defense counsel had a right to rely on his belief that defendant had made no other statements to the police besides those disclosed which might cast doubts on defendant's version of the events in question. Credibility of the witnesses became the key issue at trial. It is probable that the one statement actually allowed into evidence diminished defendant's credibility in the jurors' eyes.

As a matter of trial strategy, defense counsel might have advised his client not to testify had he been aware of the statements. Assuming that defendant would have testified anyway, some strategy for minimizing their impact might have been adopted.

We now turn to the various arguments advanced by the prosecution and explain why we cannot accept them. The prosecution first contends that it should be excused from its failure to disclose because the statements were made by defendant. Consequently, defendant had an obligation to di-

---

never be regarded as harmless to the sound judicial process. *People v Robinson,* 386 Mich 551, 563; 194 NW2d 709 (1972), *People v Swan,* 56 Mich App 22, 31-32; 223 NW2d 346 (1974), *lv den* 395 Mich 810 (1975).

[2] We choose to apply the "harmless beyond a reasonable doubt" test in preference to the standard assessing whether "one juror might have voted to acquit, but for the error" for two reasons. First, violation of a discovery order raises the spectre of a denial of constitutional rights including the right to procedural due process, the right to be free from self-incrimination, and the right to have effective assistance of counsel. Once a discovery order is entered, it becomes "the law of the case", and a defendant has a right to rely on its requirements. Second, a prosecutor who attempts to use material in violation of a discovery order is grossly negligent at best. The less strict harmless-error standard is typically employed in cases involving errors of nonconstitutional magnitude in which there is at least some argument to be made by the prosecutor justifying his action in the first instance. There is no argument which can be made which might possibly justify violating a discovery order.

vulge the statements to counsel himself. The problem with this contention is twofold. First, counsel may not have asked defendant about additional statements he had made to the police, relying on the prosecutor's response to the discovery order. Second, the statements may have seemed unimportant or had been forgotten by defendant—a man obviously untrained in the law. The statements in question were not admissions of guilt so that either explanation is entirely plausible. Most criminal defendants do not have the ability to effectively represent themselves. This is why indigent defendants are provided appointed counsel. This is why a defendant is ordinarily bound by his counsel's trial strategy. *People v Wimbush,* 45 Mich App 42, 49-50; 205 NW2d 890 (1973), *lv den* 390 Mich 770 (1973), *People v Thompson,* 69 Mich App 465; 245 NW2d 93 (1976), *lv den* 396 Mich 808 (1976). To accept the prosecution's position would be to impose on criminal defendants a knowledge of the subtleties of law most do not possess.[3]

Both below and on appeal, the prosecution relies on *Harris v New York,* 401 US 222, 224; 91 S Ct 643, 645; 28 L Ed 2d 1, 4 (1971). In *Harris,* the Supreme Court held that statements taken in violation of a defendant's *Miranda*[4] rights may be used to impeach said defendant should he choose to testify. *Harris,* however, had nothing to do with discovery, and there is no indication in the Court's opinion that counsel was unaware of defendant's statements prior to having him take the stand. Here, statements made by defendant were not

[3] This is not a case in which the statements made were so obviously incriminating that a defendant would naturally remember them and divulge them to his attorney. Such a case will have to be decided at another time.

[4] *Miranda v Arizona,* 384 US 436; 86 S Ct 1602; 16 L Ed 2d 694; 10 ALR3d 974 (1966).

disclosed in violation of a discovery order, and the order provided that undisclosed statements could not be used for any purpose, including impeachment. This is not a case in which defendant is seeking to have his conviction reversed based on the authority of *Miranda.* Rather, the violation of the court's order is the key to his argument.

The prosecutor below argued that his failure to disclose should be excused because the discovery order was a "standard order", uniformly granted. However, rather than excusing the prosecutor's failure to divulge, this constitutes a further compelling reason to reverse. If the order was "standard", the prosecutor should have known precisely what was expected of him.[5] Consequently, we also reject this argument.

## II

The final issue confronting us on appeal concerns the trial court's instructions on self-defense. The trial court gave CJI 7:9:01 on the use of deadly force in self-defense over counsel's objection that no testimony tended to show that deadly force had been employed. We agree.

Defendant was charged with assault with a dangerous weapon *without the intent* to commit murder or to inflict great bodily harm. The information itself clearly undercuts the notion that the prosecution believed deadly force had been employed. At most, the record reveals that defendant drew a knife and held it at his side. There was no testimony that he stabbed, lunged, or swung at

---

[5] Were we to accept the prosecutor's argument, we would expect similar arguments to be made in future cases. For example, a prosecutor might argue that his failure to comply with the rules of evidence was excused because these are the "standard rules" always followed by the court.

anybody with the blade. Merely displaying a knife implies a threat of violence, but, without more, it does not constitute deadly force.[6] The prosecution does not argue that throwing the shoe constituted the use of deadly force.

A simple assault is made out from either an attempted battery or an unlawful act which places another in reasonable apprehension of receiving an imminent battery. *People v Joeseype Johnson,* 407 Mich 196, 210; 284 NW2d 718 (1979). The only additional element which must be proven to make out a case of felonious assault is that a dangerous weapon was used in making the assault. *People v Childs,* 11 Mich App 408, 411; 161 NW2d 428 (1968). It is clear, then, that the use of a deadly weapon in carrying out an assault is not the equivalent of the utilization of deadly force. A felonious assault conviction can be sustained without proof of the use of or attempt to utilize any force at all.

We have examined the Michigan cases for a definition of deadly force and have found none. The term "deadly force" could be tautological. That is, deadly force has not been employed unless death actually results. We reject this definition, however, and hold that deadly force has been used where the defendant's acts are such that the natural, probable, and foreseeable consequence of said acts is death.[7] Under this definition of deadly force, it is apparent from the record that the court's self-

---

[6] The trial court concluded that the mere display of the knife during any part of the altercation justified the instruction.

[7] In a case where the evidence is conflicting on whether deadly force has been employed under this definition, the trial court should preface CJI 7:9:01 with a statement to the effect that "If you find that defendant utilized deadly force, the following is the standard for assessing his self-defense claim". Additionally, the court should also preface CJI 7:9:09 with a comparable statement indicating that what follows is the standard to be applied if the jury finds defendant only used nondeadly force. However, in cases where the evidence clearly establishes that deadly force has not been used, the court should not give CJI 7:9:01.

defense instructions were erroneous. Since the right of a defendant to claim self-defense is greatly restricted where he has used deadly force, reversal is required.

The prosecution argues, however, that the trial court cured the self-defense and deadly force instructions by immediately following them with instructions on the use of nondeadly force in self-defense. Indeed, the court also did give CJI 7:9:09. However, nothing in the nondeadly force instructions dispelled the idea that a perception of death or great bodily harm was a condition precedent to claiming self-defense. Where two instructions are given—one proper and one improper—it is presumed that the jury followed the erroneous one. *People v Neumann*, 35 Mich App 193, 195-196; 192 NW2d 345 (1971), *People v White*, 89 Mich App 726, 730; 282 NW2d 200 (1979).

Reversed and remanded.

CYNAR, J. *(concurring).* I am in accord with my colleagues' decision to reverse and remand this cause for the reasons indicated. However, I feel compelled to further comment on the failure to disclose prior statements in violation of the discovery order.

The people, under the discovery order, had a continuing duty to disclose the statements in question. Not only was there a failure to comply with the discovery order, but there was a failure to inform or to offer an explanation to the trial court, in the absence of the jury, for such noncompliance before proceeding with the cross-examination of the defendant concerning the statements in question. Had this been done before the learned and experienced trial judge, the trial record might have been further developed, as well as better protected, and possibly a retrial of the matter could have been avoided.