606 N.W.2d 19 (2000)
PEOPLE of the State of Michigan, Plaintiff-Appellee,
v.
Brandon Michael GALLIHER, Defendant-Appellant.
Docket No. 114554, COA No. 202918.
Supreme Court of Michigan.
February 8, 2000.
On order of the Court, the application for leave to appeal from the April 9, 1999 decision of the Court of Appeals is considered, and it is DENIED, because we are not persuaded that the questions presented should be reviewed by this Court.
CORRIGAN, J., concurs and states as follows:
I join in the order denying leave. In my view, any error with respect to the admission of prior-acts evidence was harmless. In the lead opinion below, Judge Sullivan accurately summarized the untainted evidence as follows:
The intent to kill or do great bodily harm may be proven by inference from any facts in evidence. People v. Johnson, 215 Mich.App. 658, 672, 547 N.W.2d 65 (1996). In this case, there was untainted evidence that defendant was "very angry" about his own house having been shot at; that he suspected that members of the Cash Flow gang including Louis Hinojosa were responsible; that he spotted Cash Flows near Mike's Food Fair on the night of the shooting, returned home, got a rifle with a scope, and went with his friends in a caravan of four cars to find them. Prior to leaving, defendant had told Ruben Haggerty that he "wanted to get them back, kill one of them or something," that "I want to kill one of them [sic] bitches," that he "wants to shoot one of them, or shoot one of their houses," that he was "tired of them always fucking around with his house," and that he "wanted to kill one of them." In one of his statements to the police, defendant said his intent was "to shoot at Cash Flows." Defendant told another officer that he fired 10 to 12 rounds at the house, but that his father "had no knowledge that they were going to shoot anyone." There was untainted evidence that the shooting took place on an evening in November when it was dark out, that the Hinojosa house had the shades drawn but the lights were on, and that the shots were fired at the front windows as opposed to the roof or the ground, leaving ten bullet holes in the windows. There was evidence that defendant, unable to locate the Cash Flows where he had previously seen them, directed codefendant Lee to drive past the Hinojosa house, slow up in front of it and turn the headlights off. It is reasonable to infer that defendant believed Hinojosa and perhaps others were indeed in the house and would therefore be shot. Additionally, codefendant Witherspoon testified that defendant's comment immediately following the shooting was, "I got the mother fuckers." [Unpublished opinion per curiam, issued April 9, 1999 (Docket No. 202918.]
When the effect of the alleged evidentiary error is weighed against the ample untainted evidence of defendant's guilt, it becomes apparent that defendant cannot establish an outcome-determinative error. People v. Lukity, 460 Mich. 484, 495, 596 N.W.2d 607 (1999).
With respect to the admission of William Lee's statement, I agree with the Court of Appeals conclusion that any Bruton error[1] was harmless beyond a reasonable doubt because Witherspoon gave "identical (and untainted) testimony." That Witherspoon gave additional untainted testimony in excess of the information conveyed in Lee's statement does not diminish the significance of this fact.
*20 MARILYN J. KELLY, J., dissents and states as follows:
I would grant leave to appeal. This case is unusual in that three separate opinions were written by the three-person panel in the Court of Appeals. Judges Sullivan and Jansen agreed that, at trial, the court improperly admitted prior bad-acts evidence but disagreed that the error was harmless. Judge Markman disagreed but concurred in Judge Sullivan's harmless error analysis. Judge Jansen dissented, concluding that the errors were not harmless. Given the confusion that MRE 404(b), the rule involving bad-acts evidence, has generated, and the apparent confusion about the proper remedy to be applied, our intervention is highly appropriate.
A jury convicted defendant of two counts of assault with intent to do great bodily harm less than murder, two counts of conspiracy to assault, and one count of felony-firearm. He was a gang member in Port Huron. The charges against him arose from a drive-by shooting at the home of Louis Hinojosa, a member of a rival gang. Gunshots had been fired at defendant's house the night before the charged incident, and defendant claimed that he committed the shooting in retaliation. No one was hurt in the incident, but the house was occupied at the time by Hinojosa's fifteen-month-old brother and an uncle who was babysitting.
In its case in chief, the prosecution presented evidence that defendant had stabbed a rival gang member two months before the shooting. The evidence was offered under MRE 404(b) to show defendant's intent at the time of the shooting.
The Court of Appeals lead opinion concludes that the admission of this evidence was improper because the prosecution failed to show its relevance to a material issue in the case. The jury was never fully informed about the prior act, save for the fact that defendant committed it and that the victim was a member of a rival gang.
The Court of Appeals recognized, also, that the trial court's jury instructions compounded the error. The trial court erroneously instructed the jury that it could consider the stabbing as it related to defendant's propensity to behave similarly in a similar situation. This instruction constituted a clear violation of MRE 404(a): "Evidence of a person's character or a trait of character is not admissible for the purpose of proving action in conformity therewith on a particular occasion...."
The trial court gave a more accurate instruction two days later at the end of the trial. However, where both a proper and an improper jury instruction are given in a criminal trial, the jury is presumed to have followed the improper instruction. People v. Burkard, 374 Mich. 430, 438, 132 N.W.2d 106 (1965); see also People v. Pace, 102 Mich.App. 522, 535, 302 N.W.2d 216 (1980). Furthermore, the trial court never instructed the jury to disregard its erroneous first instruction. Apparently, the majority of my colleagues agrees that the errors were harmless. I cannot so conclude.
In People v. Lukity,[1] this Court announced a new test to determine whether a preserved unconstitutional error should result in a reversal. Under the test, "a preserved, nonconstitutional error is not a ground for reversal unless `after an examination of the entire cause, it shall affirmatively appear' that it is more probable than not that the error was outcome determinative." Id. at 496, 596 N.W.2d 607.
We presume that juries follow trial judges' instructions. In this case, the jury heard evidence concerning a prior bad act of defendant, which was that he had stabbed someone. No factual context was offered. This error, coupled with the trial *21 judge's erroneous and misleading instruction, must have influenced the jury's verdict.[2]
I also think that a Bruton error occurred at the joint trial of the codefendants that warrants reversal. On the night of the shooting, there were three other people in the automobile with defendant. Terry Chapman was in the left rear seat. By the time of trial he had left the state and was unavailable to testify. The only other people left to testify about what was said or done in the car were defendant's codefendants, Witherspoon and Lee. Mr. Witherspoon testified that, after he shot at the house, defendant said, "I got the mother fuckers." Codefendant Lee did not testify. Officer David Seghi testified about what Lee told him during interrogation, specifically that: (1) Lee was driving the car and defendant was sitting in the front passenger seat, (2) defendant told Lee to drive down Bancroft Street, (3) defendant told Lee to slow down just before defendant leaned out of the car and fired the .22 caliber rifle, and (4) after the shots had been fired, defendant said to the men in the car, "I got the mother fuckers." The trial court instructed the jury that "Defendant William Lee's statement was admitted and may be considered by you as evidence against all three Defendants."
The United States Supreme Court, in Bruton v. United States,[3] held that a defendant's Sixth Amendment right of confrontation is violated when a nontestifying codefendant's facially incriminating unredacted confession is introduced at a joint trial. All members of the Court of Appeals panel and the prosecutor in this case concede that the admission of Lee's statement was error.[4]
It was not harmless. The fact that codefendant Witherspoon testified in a similar manner is not dispositive because Witherspoon went on to testify that he believed that what defendant meant was that he hit the house. Moreover, the statement was made after the shooting and, as such, cannot be the basis of inferring defendant's intent at the time of the shooting.
The witnesses who testified at trial stated that it was defendant's intent to fight with the other gang. The house was shot at only after defendant's group failed to find anyone with whom to fight. Also, the jury asked to hear portions of the police officer's testimony again. Under these circumstances, I conclude that the admission *22 of a nontestifying codefendant's statement through a police officer was not harmless error. See People v. Lukity, supra.[5]
We should not let this conviction stand. Defendant was deprived of a fair trial. Accordingly, I would peremptorily reverse defendant's convictions and remand for a new trial with specific instructions that the prior stabbing and codefendant Lee's statements cannot be admitted on retrial.
MICHAEL F. CAVANAGH, J., concurs with the dissenting statement of
MARILYN J. KELLY, J.
MARKMAN, J., not participating.
NOTES
[1] See Bruton v. United States, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968).
[1] 460 Mich. 484, 596 N.W.2d 607 (1999).
[2] Justice Corrigan relies on what she thinks to be untainted evidence to justify the harmlesserror conclusion. Her analysis fails to take into consideration the effect of the trial judge's erroneous instruction. In People v. Lukity, supra, Justice Cavanagh considered whether the presumption of harmless error can ever be rebutted:

In almost every criminal case, there will be at least two witnesses for the prosecution, the complainant and a law enforcement officer of some sort (and in those cases where the complainant is unavailable, there will likely be many more witnesses). Thus, there will nearly always be testimony on at least tangential issues, untainted by any error, no matter how egregious.
A favorite line among some of my colleagues in discussing harmlessness is "a reasonable jury could have found." And thus, no matter what showing a defendant may make regarding how damning the error was to his cause, the appellate court (particularly if it sanctions inference piling) will always be in a position to state "a reasonable jury could have found" and rely on whatever untainted testimony (and inferences, tenable and otherwise) exists in the record. The majority has constructed a hurdle that cannot be cleared, not because of its height, but because of the wall on the other side. [ Id. at 509, 596 N.W.2d 607.]
I perceive that the majority's apparent desire to focus exclusively on the untainted evidence in this case will cause additional errors in future trials.
[3] 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968).
[4] I note that, before trial, the prosecutor stipulated that she would not use codefendant Lee's statement as substantive evidence against defendant. She was later replaced by a second prosecutor who informed the court immediately before trial that he intended to use the statement.
[5] See also n. 2.