*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

UNPUBLISHED
August 20, 2019

Plaintiff-Appellee,

v

No. 343202
Wayne Circuit Court
LC No. 17-008646-01-FH

SIWATU-SALAMA RA,

Defendant-Appellant.

Before: GADOLA, P.J., and SERVITTO and REDFORD, JJ.

PER CURIAM.

Defendant appeals as of right her convictions after a jury trial of assault with a dangerous weapon (felonious assault), MCL 750.82, and possessing a firearm while committing a felony (felony-firearm), MCL 750.227b. The trial court sentenced defendant to concurrent terms of two years' probation for the felonious assault conviction and two years' imprisonment for the felony-firearm conviction. We reverse and remand.

## I. FACTS

Defendant was visiting at the home of her mother, Rhonda Anderson, on July 16, 2017. Defendant's teenage niece was also at the home. Defendant and her mother were sitting on the porch of the home, watching defendant's two-year old daughter, who was playing in defendant's car parked in front of the house, when the niece's teenage friend, A'Kayla Smith, arrived to visit. Defendant and Anderson had learned that Smith had beaten up the niece at school earlier, and agreed that Smith should not be at the house. Defendant therefore told Smith to call her mother to pick her up. Shortly thereafter, Smith's mother, Chanell Harvey, arrived at the home, stopped in the street, and honked her car's horn. According to Anderson, Harvey began yelling angrily from the car, cursing at Smith as Smith walked toward Harvey's car, and also cursing and yelling at defendant. Defendant told Harvey to leave, which appeared to anger Harvey more.

At trial, conflicting testimony was presented regarding the sequence of events that followed. Anderson, defendant, and defendant's niece all testified that after Smith got into Harvey's car, Harvey continued to yell angrily, then backed her car into defendant's car where defendant's two-year-old daughter was playing. Defendant ran to the car and pulled the two-

year old out, then handed the child to her niece and directed her take the child into the house. According to defendant's niece, defendant then retrieved a handgun from the console of her car, and pointed the gun at Harvey's car, demanding that Harvey leave; Harvey did not appear at all afraid, and stopped and took pictures with her phone of defendant holding the gun. By contrast, Harvey testified that she did not hit defendant's car until after defendant pointed the gun at her, that she hit defendant's car accidentally, and that after she hit the car defendant again pointed the gun at her. Anderson testified that before Harvey hit defendant's car, she yelled comments about the car and about the two-year old playing in the car. Harvey then struck defendant's car, then drove her car at Anderson, who was standing in the grass, using the car as a "battering ram." Anderson testified that Harvey came very close to hitting her and it was only by luck that she was able to avoid being hit. Anderson testified that it was not until Harvey drove the car at Anderson that defendant got the gun from the car and pointed it at Harvey. She testified that she told her daughter to put the gun down, and attempted to calm her. Meanwhile, Harvey did not immediately leave, did not appear to be afraid, and continued to yell.

Harvey eventually left, driving to a police station where she reported the incident. Three hours later, defendant reported the incident to police. Defendant was thereafter charged with assaulting Harvey and her daughter with a dangerous weapon, and with possessing a firearm while committing a felony. Following a jury trial, defendant was convicted of assaulting Harvey with a dangerous weapon, and with felony-firearm, but was found not guilty of assaulting Harvey's daughter. Defendant now appeals to this Court.

## II. DISCUSSION

Defendant contends that the trial court erred by refusing to instruct the jury on the use of nondeadly force in self-defense. She argues that she used only nondeadly force by pointing her gun at Harvey, and that the trial court thereby unfairly restricted the circumstances justifying self-defense to whether defendant reasonably feared death or serious bodily harm. We agree.

A defendant is entitled to have the evidence against her considered by a properly-instructed jury. *People v Riddle*, 467 Mich 116, 124; 649 NW2d 30 (2002). A jury instruction on self-defense is proper when there is evidence from which a jury could conclude that self-defense applies. See *People v Dupree*, 486 Mich 693, 708; 788 NW2d 399 (2010). When a defendant requests a jury instruction on a theory or defense supported by the evidence, the trial court is required to give the instruction. *Riddle*, 467 Mich at 124. We review de novo whether the trial court properly instructed the jury involving a question of law, and review for an abuse of discretion whether a particular instruction applies to the facts of the case. *People v Gillis*, 474 Mich 105, 113; 712 NW2d 419 (2006).

In addition, we review preserved, nonconstitutional errors under a harmless-error test. MCL 769.26; *People v Lyles*, 501 Mich 107, 117; 905 NW2d 199 (2017). An error is presumed to be harmless, and the defendant has the burden of overcoming this presumption. *People v Lukity*, 460 Mich 484, 493-495; 596 NW2d 607 (1999). Thus, to prevail on appeal, defendant must demonstrate that the trial court's failure to give the requested instruction was not merely erroneous, but also that it resulted in a miscarriage of justice. MCL 769.26; *Riddle*, 467 Mich at 124. A miscarriage of justice occurs when "it is more probable than not that a different outcome would have resulted without the error." *Lukity*, 460 Mich at 495.

Self-defense is an affirmative defense that justifies otherwise punishable criminal conduct, and applies when the defendant acted intentionally, but under circumstances that justified her actions. *Dupree*, 486 Mich at 707. The Self-Defense Act (SDA), MCL 780.971, *et seq.*, codified the circumstances in which a person is justified in using self-defense. *People v Guajardo*, 300 Mich App 26, 35-36; 832 NW2d 409 (2013). The SDA addresses both the use of deadly force and nondeadly force, and provides, in relevant part:

(1) An individual who has not or is not engaged in the commission of a crime at the time he or she uses deadly force may use deadly force against another individual anywhere he or she has the legal right to be with no duty to retreat if either of the following applies:

(a) The individual honestly and reasonably believes that the use of deadly force is necessary to prevent the imminent death of or imminent great bodily harm to himself or herself or to another individual.

* * *

(2) An individual who has not or is not engaged in the commission of a crime at the time he or she uses force other than deadly force may use force other than deadly force against another individual anywhere he or she has the legal right to be with no duty to retreat if he or she honestly and reasonably believes that the use of that force is necessary to defend himself or herself or another individual from the imminent unlawful use of force by another individual. [MCL 780.972.]

The use of deadly force in self-defense requires that the defendant honestly and reasonably believe that she or another is in danger of *being killed or seriously injured*, M Crim JI 7.15(3), while the use of nondeadly force in self-defense requires that the defendant honestly and reasonably believe that the use of force is necessary to protect herself or others from *the imminent unlawful use of force* by another. M Crim JI 7.22(4) (emphasis added). Thus, the use of deadly force in self-defense requires a reasonable belief that the circumstances were more dire than the circumstances necessary to support a use of nondeadly force in self-defense.

The SDA does not define "force" or "deadly force." Our Supreme Court, however, has applied the term "deadly force" as defined as force used in a circumstance in which the natural, probable, and foreseeable consequence of the act is death. *People v Couch*, 436 Mich 414, 428 n 3; 461 NW2d 683 (1990). In *People v Pace*, 102 Mich App 522, 534; 302 NW2d 216 (1980), this Court determined that a defendant's mere display of a knife during a fight, while implying a threat of violence, does not constitute deadly force. *Id.* at 533-534. In *Pace*, the defendant and the victim were involved in an argument at the victim's home that devolved into a physical fight, during which the defendant brandished a knife. Conflicting testimony was presented at trial whether the defendant brandished the knife before or after being stabbed by the victim's wife. The trial court instructed the jury regarding deadly force self-defense, but not nondeadly force self-defense. The defendant was convicted of felonious assault. *Id.* at 525. On appeal, this Court reversed and remanded, holding that the trial court erred in instructing the jury on the use of deadly force in self-defense when the appropriate instruction was on the use of nondeadly force in self-defense. This Court stated that within the context of self-defense, "[m]erely

displaying a knife implies a threat of violence, but, without more, it does not constitute deadly force." *Id*. at 534.

This holding, that a *threat* of deadly force is itself *nondeadly* force, is consistent with Black's Law Dictionary (11th ed), which defines nondeadly force as "1. Force that is neither intended nor likely to cause death or serious bodily harm; force intended to cause only minor bodily harm. 2. A threat of deadly force, such as displaying a knife." Similarly, the treatise LaFave & Scott, Criminal Law (2d ed), § 5.7, pp 455, states in relevant part, that "merely to threaten death or serious bodily harm, without any intention to carry out the threat, is not to use deadly force, so that one may be justified in pointing a gun at his attacker when he would not be justified pulling the trigger." (footnotes omitted) See also *People v Dillard*, 115 Mich App 640, 642; 321 NW2d 757 (1982) (the defendant did not use force when he pointed a gun at an officer who had illegally entered the defendant's home).[1]

Here, defendant contends that the trial court erred by not instructing the jury on nondeadly force self-defense, M Crim JI 7.22.[2] Defendant requested this instruction before the trial court, but the trial court declined to give the instruction, concluding that because a gun is a deadly weapon, pointing it must be the use of deadly force. The trial court stated:

> Well, looking at 7.22, looking at the Counts that are charged, assault with a dangerous weapon, three counts, and felony firearm, clearly, a gun is a dangerous weapon. And we're talking about the use of force. This would, in the Court's opinion, not be non-deadly force. Use of a gun is a dangerous weapon. Whether or not the victims were aware of the fact that the gun was loaded or not, the Defendant pulled the weapon, pointed the weapon and used it, as she testified, to control the situation. So I'm going to strike 7.22. We'll go with 7.15, which is self-defense using deadly force, because that's what a weapon is, in the Court's opinion.

The trial court's conclusion that the brandishing of a gun is the equivalent of deadly force is contrary to this Court's holding in *Pace* that brandishing a weapon is not the equivalent of the

---

[1] We note that both *Pace* and *Dillard* were decided before November 1, 1990. MCR 7.215(J)(1) requires this Court to follow a rule of law established by a prior published decision of this Court issued on or after November 1, 1990, that has not been reversed or modified. That court rule does not state that older cases of this Court are not precedentially binding, however, and this Court has observed that we traditionally regard published cases of this Court issued before November 1, 1990, as retaining some authority. *Woodring v Phoenix Ins Co*, 325 Mich App 108, 114; 923 NW2d 607 (2018). In addition, MCR 7.215(C)(2) provides that a published opinion of this Court has precedential effect under the rule of stare decisis. *People v Bensch*, ___ Mich App ___, ___; ___ NW2d ___ (2019) (Docket No. 341585); slip op at 2 n 6.

[2] Defendant waived any error with respect to the trial court's instructing the jury regarding use of deadly force in self-defense because defense counsel agreed to that instruction. See *People v Kowalski*, 489 Mich 488, 503; 803 NW2d 200 (2011).

use of deadly force for purposes of self-defense. Here, evidence was presented to support the defense of nondeadly force self-defense. At trial, defendant testified that she brandished the weapon but did not make any attempt to use it, that the gun was not loaded, and that the safety was on. She also testified that she believed brandishing the gun was necessary because she and her mother were both in danger when Harvey drove her car onto the grass at her mother's home, attempting to hit both defendant and her mother, and in fact did hit defendant's car. Anderson also testified that Harvey used her car as a weapon and that Harvey nearly hit her. Defendant's niece also testified that Harvey used her car as a weapon, hit defendant's car where the two-year old was playing, and attempted to hit defendant and her mother. When a defendant requests a jury instruction on a defense supported by the evidence, the trial court is required to give the instruction. *Riddle*, 467 Mich at 124. In light of the evidence supporting nondeadly force self-defense, the trial court's failure to give the jury instruction regarding the use of nondeadly force in self-defense was erroneous.

The next inquiry is whether the trial court's error was harmless. Defendant must demonstrate that the trial court's failure to give the requested instruction was not merely erroneous, but also that it resulted in a miscarriage of justice, meaning that "it is more probable than not that a different outcome would have resulted without the error." *Lukity*, 460 Mich at 495. To make this determination, our Supreme Court has instructed us to "focus on the nature of the error in light of the weight and strength of the untainted evidence." *Lyles*, 501 Mich at 118, quoting *People v Elston*, 462 Mich 751, 766; 614 NW2d 595 (2000). Our Supreme Court also has explained that we are not to focus on the importance of a wrongly denied instruction to the defense strategy, but instead upon the likelihood that the defendant would have prevailed on that strategy, which "requires a court to consider not only the relationship between the instruction and the defendant's defense strategy, but also the strength of that strategy relative to the proofs as a whole." *Lyles*, 501 Mich at 118.

We conclude that the instructional error in this case was not harmless. At trial, the jury was instructed that defendant acted in self-defense only if she honestly and reasonably believed that she or another was in danger of being killed or seriously injured. But because defendant used only nondeadly force by brandishing her weapon, she was justified in using that force if she honestly and reasonably believed that she had to use force to protect herself or others from the *imminent unlawful use of force by another*. The evidence presented in this case supports the conclusion that it was reasonable for defendant to believe that she had to use force to protect herself or others from Harvey's imminent unlawful use of force, even if it was not reasonable to believe that she was in danger of being killed or seriously injured. By instructing on deadly force self-defense but not instructing on nondeadly force self-defense, not only did the trial court not instruct the jury on the correct standard, "the jury was essentially informed of the opposite," *People v Wafer*, 501 Mich 986, 996 (MARKMAN, C.J., dissenting); that is, the jury was instructed that defendant was not entitled to assert self-defense unless she proved that she was justified in acting with deadly force when, in fact, she had not acted with deadly force. See *Pace*, 102 Mich App at 535 (the right of a defendant to claim self-defense is greatly restricted when the defendant has used deadly force).

Considering the error alongside the weight and strength of the untainted evidence and the proofs as a whole, *Lyles*, 501 Mich at 118, we conclude that the error was not harmless. The central dispute of this case was whether, under the circumstances of this case, defendant was

-5-

justified in her actions such that otherwise punishable criminal conduct was not punishable here. See *Dupree*, 486 Mich at 707. The evidence as a whole demonstrated that defendant and Harvey engaged in a heated argument in front of defendant's mother's home, and at some point during the argument Harvey hit defendant's car with her car while defendant's two-year-old daughter was in the car. There was also evidence that Harvey then drove her car at Anderson, in an apparent attempt to hit her. Defendant testified that she believed that she and her mother were both in danger because of Harvey's actions, and that belief prompted her to brandish the gun. The evidence thus supported the theory of nondeadly force self-defense, entitling defendant to an instruction on that defense, and it is more probable than not that the lack of proper instruction affected the outcome of the case because it altered the test by which the jury decided this central issue.

Reversed and remanded. We do not retain jurisdiction.

/s/ Michael F. Gadola
/s/ Deborah A. Servitto
/s/ James Robert Redford

-6-