*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

ELONZO LARAY COLLINS,

Defendant-Appellant.

UNPUBLISHED
August 5, 2021

No. 348591; 353692
Wayne Circuit Court
LC No. 18-009312-01-FC

Before: TUKEL, P.J., and SAWYER and CAMERON, JJ.

PER CURIAM.

In these consolidated cases, defendant appeals as of right, in Docket No. 348591, his jury trial convictions for assault with intent to do great bodily harm less than murder (AWIGBH), MCL 750.529, and felonious assault, MCL 750.82. In Docket No. 353692, defendant appeals as of right his resentencing, asserting his sentences are disproportionate and unreasonable. Defendant was resentenced as a third-offense habitual offender, MCL 769.11, to 25 months to 20 years' imprisonment for his AWIGBH conviction, and 25 months to 8 years' imprisonment for the felonious assault conviction.[1] For the reasons discussed herein, we affirm defendant's convictions and sentences.[2]

---

[1] Defendant was first sentenced on March 26, 2019, and he timely appealed as of right his convictions and sentences. While the appeal was pending, the parties and trial court discovered the transcript from defendant's initial sentencing hearing could not be produced. As a result, the trial court agreed to resentence defendant. The procedure regarding defendant's resentencing is not at issue on appeal.

[2] Counsel for defendant conceded at oral argument that defendant has been paroled. As a result, any challenge to his custodial sentence is moot. Nevertheless, for the sake of completeness, we consider the claimed errors in defendant's sentences on their merits.

## I. UNDERLYING FACTS

This case arises from defendant's alleged armed robbery of a tire shop. According to defendant, he visited the victim's tire shop to return a defective tire he had bought a couple days earlier. As to how events transpired, the version of events provided by the victim and defendant diverge.

The victim testified that, as he was leading defendant to where the tires were stored, defendant stuck his hand into the victim's right pocket and put a gun to the victim's head. The victim swatted the gun out of defendant's hand and reached for a revolver in the victim's left pocket. The victim and defendant struggled for control of the revolver. Eventually, they ended up near a table that held gym weights. Picking up a 4.4 pound cement weight, defendant struck the victim three or four times on the head. Defendant hit the victim hard enough that the weight broke. According to the victim, defendant then hit the victim with another metal object. The victim claimed that he lost consciousness and, while he was unconscious, defendant stole his revolver, car keys, and $17 or $18. After police arrived, they discovered the gun defendant had first pointed at the victim was a BB gun, with a makeshift silencer attached to its barrel.

Defendant denied reaching into the victim's pocket or otherwise instigating an altercation. According to defendant, he asked the victim for a refund for the defective tire, but the victim refused. Defendant would not take no for an answer, and eventually the victim became "irate" and yelled at defendant to leave his shop. When defendant refused, the victim pulled out a handgun and demanded defendant leave the tire shop. Defendant grabbed the victim's hand in an attempt to disarm him. As the two struggled for control of the gun, the victim told defendant that defendant would never get the gun from him. Defendant picked up a gym weight and hit the victim three or four times on the head with it. Defendant realized that he could potentially kill the victim by doing this, but it was a risk he was willing to take, because he felt he was in a life or death situation. After defendant hit the victim with the weight, the victim released the handgun. Examining the handgun, defendant realized it was not real and threw it toward the back of the store. Defendant denied hitting the victim with a metal object; stealing the victim's keys, revolver, or money; defendant also denied that the victim had been knocked unconscious. Defendant fled the store.

Shortly thereafter, police arrived. A police officer testified that the victim had a "deep laceration" and a large amount of blood coming from his head. The victim was taken to the hospital where he received stitches in three places on his head.

Defendant was charged as a third-offense habitual offender, MCL 769.11, with eight counts: (1) armed robbery, MCL 750.529; (2) AWIGBH; (3) larceny of a firearm, MCL 750.357b; (4) felon in possession of a firearm (felon-in-possession), MCL 750.224f; (5) felonious assault for using a facsimile gun to threaten the victim; (6) felonious assault for hitting the victim with a "metal bar"; (7) possession of a firearm in commission of a felony (felony-firearm), MCL 750.227b, for the larceny of a firearm charge; and (8) felony-firearm for the felon-in-possession charge. The jury convicted defendant of AWIGBH and felonious assault for using a facsimile gun to threaten the victim, but acquitted him of the six other charges.

## II. JURY INSTRUCTIONS

Defendant first argues, in Docket No. 348591, that the trial court violated his Sixth Amendment[3] right to trial by jury and due-process right to present a defense by instructing the jury regarding the use of deadly force in self-defense rather than nondeadly force. We disagree.

### A. PRESERVATION AND STANDARD OF REVIEW

"To preserve an instructional error for review, a defendant must object to the instruction before the jury deliberates." *People v Gonzalez*, 256 Mich App 212, 225; 663 NW2d 499 (2003). Defendant objected to the trial court's refusal to instruct the jury regarding nondeadly use of force in self-defense, arguing that the weight defendant hit the victim with did not amount to deadly force. He raises the same argument on appeal. Thus, the issue is preserved.

"Claims of instructional error are generally reviewed de novo by this Court, but the trial court's determination that a jury instruction is applicable to the facts of the case is reviewed for an abuse of discretion." *People v Dobek*, 274 Mich App 58, 82; 732 NW2d 546 (2007). "An abuse of discretion occurs when the court chooses an outcome that falls outside the range of reasonable and principled outcomes." *People v Mahone*, 294 Mich App 208, 212; 816 NW2d 436 (2011). "A trial court also necessarily abuses its discretion when it makes an error of law." *People v Al-Shara*, 311 Mich App 560, 566; 876 NW2d 826 (2015). Furthermore, this Court will not reverse a defendant's conviction on the basis of instructional error unless "it is more probable than not that the error was outcome determinative." *People v Riddle*, 467 Mich 116, 124-125; 649 NW2d 30 (2002). Finally, we review constitutional issues de novo. *Al-Shara*, 311 Mich App at 566-567.

### B. ANALYSIS

A defendant is entitled to a properly instructed jury. *People v Mills*, 450 Mich 61, 80; 537 NW2d 909 (1999), mod on other grounds 450 Mich 1212 (1995). "[T]he trial court is required to instruct the jury concerning the law applicable to the case and fully and fairly present the case to the jury in an understandable manner." *Id*. Accordingly, jury instructions "must include all the elements of the offenses charged against the defendant and any material issues, defenses, and theories that are supported by the evidence." *Dobek*, 274 Mich App at 82 (citation omitted). Indeed, "[w]hen a defendant requests a jury instruction on a theory or defense that is supported by the evidence, the trial court must give the instruction." *Riddle*, 467 Mich at 124. Imperfect instructions are not erroneous if they fairly present the issues and sufficiently protect the defendant's rights. *People v Clark*, 274 Mich App 248, 255-256; 732 NW2d 605 (2007). Additionally, an instructional error does not warrant reversal "unless refusal to take this action appears to the court inconsistent with substantial justice." MCR 2.613(A); see also *People v Muhammad*, 498 Mich 909; 870 NW2d 729 (2015). It is the defendant's burden to prove that an error resulted in a miscarriage of justice. *People v Dupree*, 486 Mich 693, 702; 788 NW2d 399 (2010).

---

[3] US Const, Am VI.

Self-defense is an affirmative defense that, if established, will justify otherwise punishable criminal conduct. *Dupree*, 486 Mich at 707. The Self-Defense Act (SDA), MCL 780.971, *et seq.*, codified the circumstances in which a person will be justified in using self-defense. *People v Guajardo*, 300 Mich App 26, 35-36; 832 NW2d 409 (2013). Under the SDA, an individual who is not engaged in a crime may use deadly force anywhere he has the legal right to be, with no duty to retreat, if he honestly and reasonably believes that the use of deadly force is necessary to prevent the imminent death, great bodily harm, or sexual assault of himself or another. MCL 780.972(1); *People v Conyer*, 281 Mich App 526, 529-530; 762 NW2d 198 (2008). Furthermore, an individual who is not engaged in a crime may use less than deadly force anywhere he has the legal right to be with no duty to retreat if he honestly and reasonably believes that the use of that force is necessary to defend himself or another from the imminent unlawful use of force. MCL 780.972(2); *People v Goree*, 296 Mich App 293, 304; 819 NW2d 82 (2012).

The SDA does not define "deadly force" or "nondeadly force." Consequently, we must look elsewhere for those definitions. This Court has defined deadly force as "an act for which 'the natural, probable, and foreseeable consequence . . . is death.' " *People v Anderson*, 322 Mich App 622, 629; 912 NW2d 607 (2018) (alteration in original), quoting *People v Pace*, 102 Mich App 522, 534; 302 NW2d 216 (1980). Additionally, *Black's Law Dictionary* defines nondeadly force as "[f]orce that is neither intended nor likely to cause death or serious bodily harm; force intended to cause only minor bodily harm." *Black's Law Dictionary* (11th ed).[4]

Considering these definitions, no reasonable juror could have found that defendant used nondeadly force when he hit the victim in the head three or four times with a concrete weight. Defendant hit the victim in the head with enough force and enough times to break the weight and to cause the victim to bleed so much that he could not see. The victim was 72 or 73 years old at the time of this incident. Common sense informs one that the natural, probable, and foreseeable consequence of striking an elderly person on the head three or four times with a 4.4 pound concrete object probably would result in death, especially in light of the degree of force defendant used. The evidence shows that defendant hit the victim hard enough to break the concrete weight and to cause a deep laceration in the victim's head from which the victim bled profusely. Although defendant testified this his intent in hitting the victim with the weight was to disarm the victim, defendant also admitted that he knew he could potentially kill the victim by doing this. Accordingly, the trial court did not abuse its discretion in concluding that the evidence did not support defendant's requested instruction.

## III. DOUBLE JEOPARDY

Defendant next argues, in Docket No. 348591, that his convictions for AWIGBH and felonious assault violate his right under the Double Jeopardy Clauses of the Michigan Constitution and the United States Constitution to be free from multiple punishments for the same crime. We disagree.

---

[4] *Black's Law Dictionary* defines deadly force as "[v]iolent action known to create a substantial risk of causing death or serious bodily harm." *Black's Law Dictionary* (11th ed).

## A. PRESERVATION AND STANDARD OF REVIEW

To preserve a double jeopardy issue, the defendant must raise it at trial. *People v Wilson*, 242 Mich App 350, 359-360; 619 NW2d 413 (2000). Defendant failed to do so. Thus, the issue is unpreserved.

Unpreserved issues are reviewed for plain error. *People v Cain*, 498 Mich 108, 116; 869 NW2d 829 (2015).

> To avoid forfeiture under the plain error rule, three requirements must be met: 1) error must have occurred, 2) the error was plain, i.e., clear or obvious, 3) and the plain error affected substantial rights. The third requirement generally requires a showing of prejudice, i.e., that the error affected the outcome of the lower court proceedings. It is the defendant rather than the Government who bears the burden of persuasion with respect to prejudice. Finally, once a defendant satisfies these three requirements, an appellate court must exercise its discretion in deciding whether to reverse. Reversal is warranted only when the plain, forfeited error resulted in the conviction of an actually innocent defendant or when an error seriously affected the fairness, integrity or public reputation of judicial proceedings independent of the defendant's innocence. [*People v Carines*, 460 Mich 750, 763-764; 597 NW2d 130 (1999) (quotation marks, citations, and brackets omitted).]

"A 'clear or obvious' error under the second prong is one that is not 'subject to reasonable dispute.' " *People v Randolph*, 502 Mich 1, 10; 917 NW2d 249 (2018).

## B. ANALYSIS

The Fifth Amendment of the United States Constitution protects a criminal defendant from being "subject for the same offence to be twice put in jeopardy." US Const Amend V. Likewise, our state Constitution. Const 1963, art 1, § 15 ("No person shall be subject for the same offense to be twice put in jeopardy."). Michigan's double jeopardy provision was intended to be "construed consistently with Michigan precedent and the Fifth Amendment." *People v Szalma*, 487 Mich 708, 715-716; 790 NW2d 662 (2010). The prohibition of double jeopardy provides three related protections: "(1) it protects against a second prosecution for the same offense after acquittal; (2) it protects against a second prosecution for the same offense after conviction; and (3) it protects against multiple punishments for the same offense." *People v Nutt*, 469 Mich 565, 574-575; 677 NW2d 1 (2004). Defendant's argument involves the third protection.

When examining the third protection, we normally use the "abstract legal elements" test set forth in *Blockburger v United States*, 284 US 299, 304; 52 S Ct 180; 76 L Ed 306 (1932).[5] *People v Ream*, 481 Mich 223, 234; 750 NW2d 536 (2008). The test "is whether each provision requires proof of a fact which the other does not." *Blockburger*, 284 US at 304. But we need not

---

[5] *Blockburger*'s double-jeopardy test sometimes is referred to also as the "same elements" test. See, e.g., *People v Smith*, 478 Mich 292, 315-316; 733 NW2d 351 (2007).

apply that test here for two reasons. First, our Supreme Court has already concluded that convictions for AWIGBH and felonious assault do not violate double jeopardy "[b]ecause the crimes have different elements." *People v Strawther*, 480 Mich 900 (2007).[6] Second, and independently, defendant's AWIGBH and felonious assault convictions arose from different events. See *People v Lugo*, 214 Mich App 699, 708; 542 NW2d 921 (1995) ("There is no violation of double jeopardy protections if one crime is complete before the other takes place, even if the offenses share common elements or one constitutes a lesser offense of the other.").

In the felony information, the prosecution charged defendant with two counts of felonious assault—one for defendant threatening the victim with a facsimile gun and the other for hitting the victim with a "metal bar." The prosecution, however, did not specify the conduct underlying the AWIGBH charge. Nevertheless, during closing argument, the prosecutor argued the jury should find defendant guilty of AWIGBH if it believed defendant struck the victim with a "cement object"; i.e. the weight defendant used to hit the victim in the head. The jury found defendant guilty of AWIGBH and guilty of felonious assault for pointing a facsimile gun at the victim, but it acquitted defendant of the felonious assault count for hitting the victim with a "metal bar." Defendant threatened the victim with the facsimile gun at the start of their confrontation; by the time defendant hit the victim in the head with the cement weight his threat with the facsimile gun had long since passed. As such, defendant's hitting the victim in the head with the cement weight and his threatening the victim with a facsimile gun constituted two distinct acts. Consequently, defendant's AWIGBH and felonious assault convictions "each . . . require[d] proof of a fact which the other does not." See *Blockburger*, 284 US at 304. Thus, defendant's convictions for both AWIGBH and felonious assault do not violate double jeopardy.

## IV. PROPORTIONALITY OF SENTENCE

Finally, defendant argues, in Docket No. 353692, that his sentences violated the principle of proportionality. We disagree.

### A. PRESERVATION AND STANDARD OF REVIEW

"A criminal defendant need not take any special steps to preserve the question of the proportionality of her sentence." *People v Foster*, 319 Mich App 365, 375; 901 NW2d 127 (2017) (quotation marks and citation omitted). Thus, the issue is preserved.

"This Court reviews the proportionality of a trial court's sentence for an abuse of discretion." *Foster*, 319 Mich App at 375. "A given sentence constitutes an abuse of discretion if that sentence violates the principle of proportionality . . . ." *People v Lowery*, 258 Mich App 167, 172; 673 NW2d 107 (2003).

---

[6] An order of the Michigan Supreme Court is binding precedent if it contains a "concise statement of the applicable facts and the reason for the decision." *People v Crall*, 444 Mich 463, 464 n 8; 510 NW2d 182 (1993), citing Const 1963, art 6, § 6.

## B. ANALYSIS

"When a trial court does not depart from the recommended minimum sentencing range, the minimum sentence must be affirmed unless there was an error in scoring or the trial court relied on inaccurate information." *People v Schrauben*, 314 Mich App 181, 196; 886 NW2d 173 (2016), citing MCL 769.34(10).[7] "[T]his Court is required to review for reasonableness only those sentences that depart from the range recommended by the statutory guidelines." *Anderson*, 322 Mich App at 636. In contrast, however, a sentence that falls within the appropriate sentencing guidelines range "is presumptively proportionate and must be affirmed." *People v Jackson*, 320 Mich App 514, 527; 907 NW2d 865 (2017), reversed on other grounds 504 Mich 929 (2019).

Defendant argues that we should find that MCL 769.34(10) is no longer valid in light of *People v Lockridge*, 498 Mich 358; 870 NW2d 502 (2015), which rendered the sentencing guidelines advisory. Specifically, defendant argues that the only fair reading of *Lockridge* and MCL 769.34(10) also would render that statute invalid, because it imposes a mandatory, irrebuttable presumption of reasonableness for sentences imposed within the guidelines. Whatever the merits of that argument might be if we were writing on a blank slate, it is not an option available to us. This Court already has addressed that issue and held that "*Lockridge* did not alter or diminish MCL 769.34(10)." *Schrauben*, 314 Mich App at 196 n 1. Although there has been some question regarding the constitutionality of MCL 769.34(10) post-*Lockridge*,[8] this Court's invariable rule under the principle of stare decisis requires us to follow published opinions. MCR 7.215(J)(1) ("A panel of the Court of Appeals must follow the rule of law established by a prior published decision of the Court of Appeals issued on or after November 1, 1990, that has not been reversed or modified by the Supreme Court, or by a special panel of the Court of Appeals as provided in this rule."). Thus, we are bound by this Court's published decision in *Schrauben*, 314 Mich App 181,

---

[7] MCL 769.34(10) provides:

> If a minimum sentence is within the appropriate guidelines sentence range, the court of appeals shall affirm that sentence and shall not remand for resentencing absent an error in scoring the sentencing guidelines or inaccurate information relied upon in determining the defendant's sentence. A party shall not raise on appeal an issue challenging the scoring of the sentencing guidelines or challenging the accuracy of information relied upon in determining a sentence that is within the appropriate guidelines sentence range unless the party has raised the issue at sentencing, in a proper motion for resentencing, or in a proper motion to remand filed in the court of appeals.

[8] For example, in *People v Ames*, 501 Mich 1026; 908 NW2d 303 (2018), our Supreme Court directed oral argument on the application for leave to appeal in that case to consider whether MCL 769.34(10) has been rendered invalid by *Lockridge*. After hearing oral argument, our Supreme Court denied leave to appeal in that case. *People v Ames*, 504 Mich 899; 929 NW2d 283 (2019). Nevertheless, our Supreme Court's decision to deny leave to appeal has no precedential value. See *Nuculovic v Hill*, 287 Mich App 58, 68; 783 NW2d 124 (2010); MCR 7.305(H)(3) ("If leave to appeal is denied after a decision of the Court of Appeals, the Court of Appeals decision becomes the final adjudication and may be enforced in accordance with its terms.").

and must affirm defendant's sentences because they fall within his applicable sentencing guidelines range and defendant does not argue that there was an error in scoring or that the trial court relied on inaccurate information.

## V. CONCLUSION

We affirm defendant's convictions and sentences for the reasons stated in this opinion.

/s/ Jonathan Tukel
/s/ David H. Sawyer
/s/ Thomas C. Cameron