*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

   Plaintiff-Appellee,

v

ERIC ARLINGTON OGILVIE,

   Defendant-Appellant.

FOR PUBLICATION
March 3, 2022
9:05 a.m.

No. 354355
Wayne Circuit Court
LC No. 09-025646-01-FH

Before: BOONSTRA, P.J., and RONAYNE KRAUSE and CAMERON, JJ.

RONAYNE KRAUSE, J.

Defendant appeals as of right his jury trial convictions of felonious assault, MCL 750.82; and possession of a firearm during the commission of a felony (felony-firearm), MCL 750.227b; for which he was sentenced to three years' probation and two years' imprisonment, respectively.[1] This case returns to us after the United Stated District Court for the Eastern District of Michigan conditionally granted defendant's petition for a writ of habeas corpus on the basis of a denial of appellate counsel for his first appeal and directed us to reinstate defendant's right to appeal. We now reverse defendant's convictions and remand for a new trial.

## I. BACKGROUND FACTS AND PROCEDURAL HISTORY

In defendant's previous appeal, this Court set forth the essential facts as follows:

Defendant was convicted of feloniously assaulting his neighbor, Eric Watson (the "victim"), by pointing a gun at him during an argument outside defendant's home on September 13, 2009. The victim and defendant gave different accounts of the circumstances that preceded defendant's act of pointing a gun at the victim, but both agreed that the victim approached defendant while defendant was outside working on his lawn in front of his home. The victim claimed that he approached defendant on the sidewalk to speak to him about grass clippings that he

---

[1] Defendant has since served those sentences and is out of prison.

left on the sidewalk. According to the victim, defendant began arguing and placed his hand near the victim's face. The victim claimed that he pushed defendant's hand out of his face and backed away as defendant pulled out a gun and pointed it at the victim. According to defendant, the victim aggressively approached him in a threatening manner and stated, "Go ahead pull yours I'll pull mind [sic]." Defendant, who was licensed to carry a gun, testified that he pulled out his gun and pointed it in the general direction of the victim because he thought the victim was getting ready to pull something out from behind his back and he feared for his safety and the safety of his young son, who was also in front of the house. The jury convicted defendant of felonious assault and felony-firearm. [*People v Ogilvie* (*Ogilvie I*), unpublished per curiam opinion of the Court of Appeals, issued May 23, 2013 (Docket Nos. 298302 and 307897), unpub op at p 2.]

Defendant proceeded *in propria persona* in his first appeal, and this Court affirmed defendant's convictions and sentences. *Id*. at pp 3-14.[2]

Defendant pursued other challenges to his convictions, and eventually the United States District Court for the Eastern District of Michigan "conditionally" granted defendant's petition for a writ of habeas corpus. As noted, the District Court concluded that defendant had been denied his right to the assistance of counsel in his first appeal. *Ogilvie v Gidley* (*Ogilvie II*), opinion of the United States District Court for the Eastern District of Michigan, issued July 6, 2020 (Docket No. 16-cv-11013), p 2. The District Court held a variety of other claims raised by defendant in abeyance and ordered that defendant was entitled to a new appeal of right. *Id*. at pp 2-3. This case is now before us again for plenary review,[3] with defendant now represented by counsel.

## II. INEFFECTIVE ASSISTANCE OF TRIAL COUNSEL

Defendant again raises a number of issues. However, because we find one of those issues dispositive, we deem the other issues moot and we will not address them. Specifically, we agree that the jury was improperly instructed regarding the principles applicable to his claim of self-defense, and defendant received ineffective assistance of counsel because counsel did not to seek to correct that error.

## A. STANDARD OF REVIEW AND PRINCIPLES OF LAW

Defendant sought a *Ginther*[4] hearing in the trial court, so his claim of ineffective assistance of counsel is preserved for our review. See *People v Jackson (On Reconsideration)*, 313 Mich

---

[2] Defendant's first appeal also concerned the trial court's revocation of his probation, which is not at issue in this appeal. See *Ogilvie I*, unpub op at pp 14-20.

[3] Because this appeal is a consequence of defendant's prior deprivation of a constitutional right to the assistance of counsel, we are not bound to apply the law of the case doctrine. See *People v Murphy*, 481 Mich 919, 919; 750 NW2d 582 (2008); *Locricchio v Evening News Ass'n*, 438 Mich 84, 108-110; 476 NW2d 112 (1991).

[4] *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973).

App 409, 431; 884 NW2d 297 (2015). Criminal defendants are entitled to receive effective assistance of counsel, and they are presumed to have received effective assistance. *People v Schrauben*, 314 Mich App 181, 189-190; 886 NW2d 173 (2016). "Whether a person has been denied effective assistance of counsel is a mixed question of fact and constitutional law." *People v LeBlanc*, 465 Mich 575, 579; 640 NW2d 246 (2002). "To establish that a defendant's trial counsel was ineffective, a defendant must show: (1) that counsel's performance fell below an objective standard of reasonableness under prevailing professional norms and (2) that there is a reasonable probability that, but for counsel's error, the result of the proceedings would have been different." *Schrauben*, 314 Mich App at 190, citing *Strickland v Washington*, 466 US 668, 688, 694; 104 S Ct 2052; 80 L Ed 2d 674 (1984). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 US at 669.

This Court will not find trial counsel to be ineffective where an objection would have been futile; nor will it second-guess matters of trial strategy. *People v Thomas*, 260 Mich App 450, 457; 678 NW2d 631 (2004); *People v Rockey*, 237 Mich App 74, 76-77; 601 NW2d 887 (1999). A trial court's findings of fact are reviewed for clear error, and "whether those facts constitute a violation of the defendant's constitutional right to effective assistance of counsel" is a question of law that we review de novo. *LeBlanc*, 465 Mich at 579.

"A criminal defendant has the right to have a properly instructed jury consider the evidence against him." *People v Mills*, 450 Mich 61, 80; 537 NW2d 909 (1995). "The instruction to the jury must include all elements of the crime charged . . . and must not exclude from jury consideration material issues, defenses or theories if there is evidence to support them." *People v Reed*, 393 Mich 342, 349-350; 224 NW2d 867 (1975). Although the trial court is not obligated to *sua sponte* present instructions regarding a defendant's theory, the trial court is obligated to give instructions on any theory or defense supported by the evidence upon request. *Mills*, 450 Mich at 80-81. Claims of instructional error are reviewed for harmlessness. *People v Hawthorne*, 474 Mich 174, 176; 713 NW2d 724 (2006). "Jurors are presumed to follow the court's instructions, and instructions are presumed to cure most errors." *People v Mullins*, 322 Mich App 151, 173; 911 NW2d 201 (2017).

## B. CORRECTNESS OF JURY INSTRUCTIONS

In a nutshell, defendant drew a loaded handgun and pointed it at his neighbor, Eric Watson. Defendant's theory of the case was that Watson approached defendant in an aggressive manner while defendant was on his front lawn with his son. According to defendant, he asked Watson to leave, but Watson instead escalated the altercation. Defendant contended that Watson touched and punched defendant, and Watson also threatened defendant. Defendant continued to ask Watson to leave, and he also tried to retreat but could not do so safely, in part because he was concerned for his son. Because Watson had not responded to any requests to leave or calm down, and because defendant was increasingly concerned for his and his son's safety, defendant drew his handgun and pointed it at Watson. Defendant then asked Watson to walk away for the final time, and Watson complied. The altercation then ended.

"Once a defendant raises the issue of self-defense and satisfies the initial burden of producing some evidence from which a jury could conclude that the elements necessary to establish a prima facie defense of self-defense exist, the prosecution must exclude the possibility

of self-defense beyond a reasonable doubt." *People v Stevens*, 306 Mich App 620, 630; 858 NW2d 98 (2014) (quotation marks and citation omitted). "With the enactment of the Self-Defense Act (SDA), MCL 780.971 *et seq.*, the Legislature codified the circumstances in which a person may use deadly force in self-defense or in defense of another person without having the duty to retreat." *People v Dupree*, 486 Mich 693, 708; 788 NW2d 399 (2010). The SDA also codified the law regarding self-defense using "force other than deadly force" and the duty to retreat. MCL 780.972(2). Specifically, in MCL 780.972, the SDA states:

> (1) An individual who has not or is not engaged in the commission of a crime at the time he or she uses deadly force may use deadly force against another individual anywhere he or she has the legal right to be with no duty to retreat if either of the following applies:
>
>> (a) The individual honestly and reasonably believes that the use of deadly force is necessary to prevent the imminent death of or imminent great bodily harm to himself or herself or to another individual.
>>
>> (b) The individual honestly and reasonably believes that the use of deadly force is necessary to prevent the imminent sexual assault of himself or herself or of another individual.
>
> (2) An individual who has not or is not engaged in the commission of a crime at the time he or she uses force other than deadly force may use force other than deadly force against another individual anywhere he or she has the legal right to be with no duty to retreat if he or she honestly and reasonably believes that the use of that force is necessary to defend himself or herself or another individual from the imminent unlawful use of force by another individual.

"Section 2 of the SDA removed the traditional common-law duty to retreat, so long as the individual engaging in self-defense or defense of others was not committing or had not committed a crime and had a legal right to be where they were when they used force." *People v Leffew*, ___ Mich ___, ___; ___ NW2d ___ (2022) (Docket Nos. 161797, 161805), slip op at pp 12-13. "[A]side from limiting one's duty to retreat, the statute did not modify or abrogate the common-law defenses of self-defense or defense of others" or the right to use deadly or nondeadly force. *Id.* at ___, slip op at p 13; see also MCL 780.973, MCL 780.974. The related jury instructions for the same topics follow the law as stated in the SDA. M Crim JI 7.15 ("Use of Deadly Force in Self-Defense"); M Crim JI 7.16 ("Duty to Retreat to Avoid Using Force or Deadly Force"); M Crim JI 7.21 ("Defense of Others—Deadly Force"); M Crim JI 7.22 ("Use of Nondeadly Force in Self-Defense or Defense of Others").

The core issue is whether defendant's act of pointing a loaded gun at Watson constituted the use of deadly force or the use of nondeadly force. Defendant's trial counsel, the prosecution, and the trial court apparently assumed the act to constitute the use of deadly force, so they agreed the jury should be instructed regarding the use of deadly force in self-defense or in defense of others. The trial court read M Crim JI 7.15, 7.16, and 7.21, which correspond with MCL 780.792(1). The trial court did not read M Crim JI 7.22, which corresponds to MCL 780.972(2).

Consequently, the jury was instructed defendant could only successfully claim self-defense or defense of his son if he "honestly and reasonably believe[d] that the use of deadly force is necessary to prevent the imminent death of or imminent great bodily harm to himself [] or to" his son. MCL 780.972(1). The jury was also instructed that it may consider whether defendant could have safely retreated. Defendant argues, and we agree, that the instructions were erroneous because he merely threatened to use deadly force, and a threat of deadly force is not the *use of* deadly force.

The SDA does not define the terms "deadly force" and "nondeadly force," so it does not explain the difference between the two. MCL 780.972. This Court has long defined "deadly force" as "where the defendant's acts are such that the natural, probable, and foreseeable consequence of said acts is death." *People v Pace*, 102 Mich App 522, 534; 302 NW2d 216 (1980); see also *People v Anderson*, 322 Mich App 622, 629; 912 NW2d 607 (2018). In *Pace*, this Court specifically held that "merely displaying a knife implies a threat of violence, but, without more, it does not constitute deadly force." *Pace*, 102 Mich App at 534. Of course, a gun functions quite differently from a knife, and defendant did more than merely display his gun. Nevertheless, this Court has also held that pointing a gun at police officers who had illegally entered the defendant's home, where no shots were fired and no harm or injury occurred, did not constitute use of deadly force.[5] *People v Dillard*, 115 Mich App 640, 642; 321 NW2d 757 (1982).

Because *Dillard* and *Pace* predate MCR 7.215(J)(1),[6] we are not strictly bound to follow them. However, as published opinions, they nevertheless have "precedential effect under the rule of stare decisis." MCR 7.215(C)(2). See also *People v Bensch*, 328 Mich App 1, 7 n 6; 935 NW2d 382 (2019). Furthermore, as noted, the SDA leaves intact the common law regarding the right to use deadly or nondeadly force. MCL 780.974. We conclude that *Pace* should be given precedential effect; and to the extent *Dillard* held that pointing—without shooting—a loaded gun did not constitute the use of deadly force, we conclude that *Dillard* should also be given precedential effect.

---

[5] We note that the *Dillard* Court also made the pronouncement, without any supporting analysis, that pointing a loaded gun at the intruders into his home "involved the use of no force whatsoever." *Dillard*, 115 Mich App at 642. Like the People, we find that pronouncement 'amazing' as well as legally incorrect. Although, as we discuss, we agree with the *Dillard* Court that pointing a loaded gun without actually shooting the gun does not constitute the use of *deadly* force, it would not be perceived by any reasonable person as the use of *no* force. Otherwise, although the facts of *Dillard* involved an invasion into the defendant's home rather than an altercation outside a home, the "castle doctrine" would affect whether the defendant was obligated to retreat, not whether his acts constituted the use of deadly force. See *People v Riddle*, 467 Mich 116, 134-140; 649 NW2d 30 (2002).

[6] Sometimes referred to as "the first-out rule," MCR 7.215(J)(1) provides that we are required to "follow the rule of law established by a prior published decision of the Court of Appeals issued on or after November 1, 1990," so long as the decision has not been overturned or modified.

Two other considerations support that conclusion. Although dictionaries do not have the force of law—being guides rather than mandates—we note that *Black's Law Dictionary* (11th ed) defines nondeadly force as "1. [f]orce that is neither intended nor likely to cause death or serious bodily harm; force intended to cause only minor bodily harm," or "2. [a] threat of deadly force, such as displaying a knife." To the extent *Dillard* held that a threat of deadly force is not the use of deadly force,[7] the *Dillard* holding is consistent with this dictionary definition.[8] Finally, underpinning self-defense doctrine is the longstanding principle that a person should use no more force than reasonably appears necessary to repel a threat. *Pond v People*, 8 Mich 150, 173-177 (1860); *People v Riddle*, 467 Mich 116, 127, 142; 649 NW2d 30 (2002). It would be inconsistent with that principle to treat a situation in which no one was actually put at direct risk of harm as indistinguishable from a situation in which bullets were actually fired or someone was actually shot. We do not believe it would encourage restraint to treat a threat of deadly force as a use of deadly force.

In consideration of the above cases and principles, we conclude that, under the circumstances, defendant did not use deadly force.[9] The instructions given to the jury regarding the use of deadly force were therefore incorrect. Instead, the jury should have been instructed on the law regarding the use of nondeadly force.

Defendant also argues that the jury was improperly instructed regarding his duty to retreat, or, more specifically, his lack of a duty to retreat. We agree in part. There was no assertion that defendant had no "legal right to be" in his yard or that he was "engaged in the commission of a crime at the time." MCL 780.972(2). Therefore, he had "no duty to retreat if he . . . honestly and reasonably believe[d] that the use of that force [was] necessary to defend himself . . . or [his son] from the imminent unlawful use of force by another individual." *Id*. A duty to retreat applies to both the use of deadly force and the use of nondeadly force. However, M Crim JI 7.16(3)(c) subtly yet critically altered the conditions under which defendant had no duty to retreat before using

---

[7] See footnote 5.

[8] The People also describe the holding in *Dillard* as dicta. We disagree in part. "Dictum is a judicial comment that is not necessary to the decision in the case . . . [b]ut if a court intentionally addresses and decides an issue that is germane to the controversy in the case, the statement is not dictum even if the issue was not decisive." *Pew v Michigan State Univ*, 307 Mich App 328, 334; 859 NW2d 246 (2014). The *Dillard* Court explained that the defendant had a right to use only "reasonably necessary" force to resist an unlawful arrest, and it explicitly emphasized that if the defendant had "actually used deadly force in the instant case, his response may have gone beyond the bounds of reasonableness." *Dillard*, 115 Mich App at 641-642. Whether the defendant's act of pointing a gun at the officers constituted deadly or nondeadly force was therefore directly necessary to the decision in the case, so it was not dicta. The pronouncement that pointing a loaded gun at the officers constituted *no* use of force, in contrast, was not necessary to the decision in the case, but as discussed in footnote 5, we reject that pronouncement as legally wrong in any event.

[9] We do not intend to foreclose, as a matter of law, the possibility that whether a defendant used deadly or nondeadly force could, in an appropriate case, be a question appropriate for the jury. See *Pace*, 102 Mich App at 534 n 7. This is not such a case.

nondeadly force. The jury was instructed that, in relevant part, defendant would not be required to retreat if he "ha[d] an honest and reasonable belief that the use of deadly force [was] necessary to prevent eminent [sic] death, great bodily harm or a sexual assault." Thus, defendant was held to a higher standard than specified by MCL 780.972(2), because under the instructions as given, defendant must have anticipated death, great bodily harm, or sexual assault; the statute, however, only required defendant to have anticipated "the imminent unlawful use of force." As a consequence, the instructions as given increased the burden upon the defense and lightened the burden upon the prosecution. We conclude that these two instructional errors were not harmless. See *People v Rodriguez*, 463 Mich 466, 474; 620 NW2d 13 (2000).

## C. REASONABLENESS OF COUNSEL'S PERFORMANCE

Having concluded that the jury was improperly instructed, we next consider whether trial counsel's failure to request correct jury instructions fell below an objective standard of reasonableness. During the *Ginther* hearing, trial counsel testified he did not consider objecting to the instructions regarding the duty to retreat or the use of deadly force in self-defense or defense of others; nor did he consider requesting the instruction for the use of nondeadly force in self-defense or defense of others. He acknowledged the pointing of a gun was not the use of deadly force and the facts of the case undisputedly showed no duty to retreat for defendant under the SDA. Trial counsel testified he did not have any trial strategy that caused him to act in such a manner. The effect of counsel's failure was to make the defense more difficult than necessary without any strategic reason for doing so, and at a minimum resulted in confusing the issues for the jury to decide. Under the circumstances, we therefore conclude that it was objectively unreasonable for counsel to have refrained from objecting to the jury instructions and for failing to seek correct jury instructions.

## D. PROBABILITY OF A DIFFERENT OUTCOME

As an initial matter, it would not have been futile for trial counsel to have objected to the instructions given and to have sought correct instructions. As discussed, "when a jury instruction is requested on any theories or defenses and is supported by evidence, it must be given to the jury by the trial judge." *Mills*, 450 Mich at 81. The jury instructions given were incorrect, and an appropriate standard jury instruction was available. If trial counsel had requested correct instructions, it would have been error for the trial court to refuse the request.

A slightly closer question is whether there is a reasonable probability that the outcome of the proceedings would have differed if the correct instructions had been given. In a case involving the use of deadly force inside the defendant's home (where the defendant had no duty to retreat), our Supreme Court held that it was not clear error to instruct the jury regarding the general duty to retreat, followed by the exception to that duty for persons attacked inside their own home. *People v Richardson*, 490 Mich 115, 118-120; 803 NW2d 302 (2011). However, our Supreme Court's holding was premised in part on the jury's apparent finding that the defendant's use of deadly force was unnecessary; the Court also concluded that it "might have been clearer" for the trial court to have omitted the general duty to retreat. *Id*. at 120-121. Importantly, *Richardson* involved the use of deadly force, unlike this case. The instructional error in *Richardson* involved merely giving an unnecessary instruction. In contrast, the instructional error in this matter fundamentally altered the nature of the questions given to the jury for its consideration. More recently, our Supreme

Court has explained that instructional error may be prejudicial where the instructions as given fail to provide the jury with adequately specific guidance, especially if the jury was not fully informed that the law supported the defendant's defense. *Leffew*, ___ Mich at ___, slip op at pp 21-24.

Although the gravamen of the prosecutor's argument in this case was that defendant unnecessarily escalated a relatively minor dispute, at one point the prosecutor commented that "there [was] nothing that stopped [defendant] from turning around and going into the house." The prosecutor never specifically argued to the jury—in so many words—that defendant had an obligation to retreat, and such an argument would not have been entirely improper. Nevertheless, as discussed, M Crim JI 7.16 imposed a more stringent duty to retreat upon defendant than required by law where defendant only used nondeadly force. Therefore, there is a strong possibility that the jury might have inferred from this comment and from M Crim JI 7.16 that defendant had an obligation to retreat because defendant did not reasonably anticipate death, great bodily harm, or sexual assault, and defendant failed to avail himself of the ability to retreat.

More importantly, the entirety of the trial was premised on the incorrect theory that defendant used deadly force in response to a nondeadly threat. Notably, the evidence tended to show that Watson had started the altercation and that Watson posed a credible threat to defendant. Indeed, one of the prosecutor's comments implied that it would have been appropriate for defendant to respond in *some* manner, implicitly conceding that *some* degree of nondeadly force would have been reasonable. The proper inquiry would have been whether defendant reasonably believed he needed to use force to protect himself or his son from imminent unlawful use of force by Watson, and whether defendant used an appropriate degree of force under the circumstances. Instead, the premise that defendant used *deadly* force resulted in an inappropriately narrow focus on the specific question of whether Watson was reaching for a weapon of his own or merely pulling up his pants. The prosecutor's argument that defendant over-reacted to a possible punch to the face or other physical violence with *deadly* force would have been seriously blunted, because, again, the correct analysis would have focused on whether defendant feared an imminent threat of unlawful force and reacted proportionately.[10]

The trial was fundamentally tainted by applying the wrong legal principles regarding self-defense and by giving the wrong jury instructions. The jury was essentially asked to decide only whether defendant reasonably believed Watson was reaching for a weapon. Had the jury been properly instructed, it would have been asked to resolve an issue much more favorable to the defense: whether defendant reasonably believed that pointing his gun at Watson was necessary to protect himself or his son from the imminent unlawful use of nondeadly force by Watson. We conclude that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 US at 694.

---

[10] We emphasize that nothing in this opinion should be construed as a determination, one way or the other, of whether defendant's conduct of pointing the gun at Watson was necessary and proportionate. We hold *only* that (1) because defendant never fired the gun or otherwise showed any intention of causing death or serious bodily harm, he did not use deadly force; (2) the misapprehension that defendant did use deadly force undermined the fairness of his trial; and (3) trial counsel was ineffective for failing to correct that misapprehension.

We reverse defendant's convictions and remand for a new trial. His remaining claims on appeal are therefore moot. Defendant's remaining claims on appeal would, if successful, result in the same relief: the granting of a new trial. Consequently, any judgment as to those issues would have no further practical legal effect. See *People v Smith*, 502 Mich 624, 631; 918 NW2d 718 (2018). We decline to consider those issues. See *id*. at 631-632.

Reversed and remanded for a new trial. We do not retain jurisdiction.

/s/ Amy Ronayne Krause
/s/ Mark T. Boonstra
/s/ Thomas C. Cameron